FILED

2005 SEP 29 AM 8:25

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA, )
) 6:05-cv-1431-Orl-18JGG
Plaintiff, )
)
v. )
)
PIERRE J. GAUTHIER and JEAN JAY )
GAUTHIER a/k/a EARL L. SAVOY, )
)
Defendants. )

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF**

The United States of America, plaintiff, for its complaint against the defendants, Pierre J. Gauthier and Jean Jay Gauthier (who is also known as Earl L. Savoy), states as follows.

**Nature of Action**

1. The United States is bringing this complaint to enjoin the defendants, individually and doing business as or through any other entity, and any other persons in active concert or participation with them, from directly or indirectly:

(a) Organizing, promoting, marketing, or selling any tax shelter, plan or arrangement that advises, assists, or encourages customers to attempt to violate the internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities;

(b) Making false statements about the allowability of any deduction or credit, the excludability of any income, or the securing of any tax benefit by the reason of participating in such tax shelters, plans or arrangements;

(c) Encouraging, instructing, advising or assisting others to violate the tax laws, including to evade the payment of taxes;

(d) Engaging in conduct subject to penalty under 26 U.S.C. § 6700, *i.e.*, by making or furnishing, in connection with the organization or sale of a shelter, plan, or arrangement, a statement the defendants know or have reason to know to be false or fraudulent as to any material matter under the federal tax laws;

(e) Engaging in any conduct that interferes with the administration and enforcement of the internal revenue laws;

(f) Engaging in any activity subject to penalty under the Internal Revenue Code.

2. An injunction is warranted based on the defendants' continuing conduct as promoters of a tax-fraud plan. If not enjoined, the defendants' continuing actions will result in the Internal Revenue Service having to devote scarce resources to attempt to locate and investigate the defendants' customers, who by participation in the defendants' scheme have illegally stopped filing accurate federal income tax returns and paying their federal income taxes. The defendants' actions, if not stopped, may result in penalties and other civil and criminal sanctions being imposed on those customers.

**Jurisdiction and Venue**

3. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1340 and 1345, and §§ 7402(a) and 7408 of the Internal Revenue Code of 1986 (26 U.S.C.) ("Code").

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**Authorization**

5. This action has been requested by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of Treasury, and commenced at the direction of a

delegate of the Attorney General of the United States, pursuant to Code §§ 7402 and 7408.

**Defendants**

6. Pierre Gauthier's business address is 7523 Aloma Avenue, Suite 207, Winter Park, Florida 32792. He resides at 300 Isabella Drive, Longwood, Florida 32750.

7. Jean Jay Gauthier, who also uses the alias Earl L. Savoy, has addresses at 5415 Lake Howell Road, Winter Park, Florida 32792; 7523 Aloma Avenue, Suite 207, Winter Park, Florida 32792; and 4605 Riverton Drive, Orlando, Florida 32817. He is the father of defendant Pierre Gauthier.

**Defendants' Activities**

8. The Gauthiers promote tax-fraud schemes through such entities as Prosper International Ltd. ("PIL") and Prosper International League Limited ("PILL").

9. According to the defendants' promotional literature, PIL has offices in the Bahamas, Grenada and Panama, and PILL is registered in Belize and based in Grenada.

10. The Gauthiers, along with Donald Shaw (now deceased), are the founders and principal shareholders of PIL. Jay Gauthier, along with Shaw, founded PILL. Pierre Gauthier is the Managing Director of the Board of Trustees for the PIL and PILL trusts, and is the chief operating officer and managing director of PIL.

11. There are multiple aspects to the Gauthiers' program. One is a pyramid scheme in which participants pay $200 to $800 with a promise they will receive payments from persons lower in the scheme when they are recruited.

12. The New Zealand Securities Commission has issued a prohibition order against

PILL for misleading advertising with respect to this part of the promotion.

13. The Gauthiers publicize themselves as offshore service providers and market a variety of offshore tax-fraud schemes that are designed to help participants conceal their assets, evade federal taxes, and obstruct IRS examination and collection efforts.

14. The Gauthiers' scheme involves the sale and use of offshore credit or debit cards, foreign trusts, International Business Corporations, and private interest foundations. The Gauthiers' website includes online applications for each of the promotions' products.

15. According to the promotional materials, these offshore schemes are created for the purposes of (1) providing liability protection and financial privacy, (2) avoiding probate and estate taxes, and (3) saving taxes. The defendants state that they "will help you develop a secondary offshore income, sheltered and unencumbered."

*Offshore Trusts*

16. In their promotional literature, the Gauthiers recommend that participants transfer assets, including their home, automobile, personal goods and household furnishings, into offshore trusts.

17. The Gauthiers falsely inform their customers that, through the use of the trusts, participants can shelter taxable income and hide assets from the taxing authorities.

18. The Gauthiers state that the advantages of their offshore trusts include "tax savings, avoidance and deferral." The Gauthiers falsely state that the offshore trusts they promote are not subject to taxation.

19. The Gauthiers also stress the secrecy of the offshore trust program and state that

there are no reporting requirements, and that participants can keep their financial affairs in complete confidentiality and their property safe from claims, judgments or bankruptcy proceedings. They advertise that the offshore trusts provide "protection against judgment" and a means by which assets "can't be seized, liened against or attached by a court or a tax authority."

20. Pierre Gauthier is the recommended trustee for the foreign trusts. Participants are advised that they can maintain control of the trusts through a "Letter of Wishes" that contains their directions to the trustee regarding the trust and its property.

*International Business Corporations*

21. As part of their abusive program, the Gauthiers also promote International Business Corporations ("IBCs"), which are offshore shell corporations. The Gauthiers recommend that IBCs be used in lieu of or in addition to offshore trusts for holding property or income. The defendants' promotional material states that the IBCs could be owned by offshore trusts that they market and create.

22. Under the defendants' scheme, their customers transfer to an IBC their own businesses, partnerships, and property, including residences. The IBC then pays the participant or his trust a limited salary, which the defendants falsely claim will result in tax savings to the participant. The defendants falsely claim that the remaining income earned by the participant, through his IBC, is tax free.

23. The Gauthiers recommend that customers set up an offshore account in the IBC's name, and use it to pay the participants' personal bills. The personal bills are

improperly deducted by the IBC and not reported as income to the participant. According to the Gauthiers, "practically anything can qualify as a genuine business expense" in a tax haven jurisdiction.

24. The Gauthiers falsely state that IBCs provide the opportunity to minimize participants' tax liability. According to the defendants, IBCs are exempt from most taxes, including capital gains, interest income, sales tax or VAT, estate, gift, and inventory.

25. To ensure secrecy, the Gauthiers suggest that non-U.S. citizens be appointed nominal directors of the IBC, although the participant remains in control of the company. Furthermore, the defendants advertise that the shares of the offshore corporations can be held by nominees to ensure that the participant's identity is not revealed.

*Private Interest Foundations*

26. The Gauthiers also promote the use of so-called foreign private interest foundations. According to the defendants, these entities provide a means by which participants can control and maintain ownership of foreign corporations, but can circumvent controlled-foreign-corporation rules and reporting requirements.

27. The Gauthiers' promotional materials state that private interest foundations can be useful in transferring funds to or from offshore accounts. The Gauthiers also falsely state that the foundations can be used to avoid gift taxes and reporting requirements.

28. The Gauthiers state that they will provide customers with the registered office, nominee directors, shareholders, and legal services pertaining to the IBC or private interest foundation that they will establish.

29. Private interest foundations are simply another vehicle promoted by the Gauthiers to help customers illegally conceal income and assets from the IRS.

*Offshore Payment Cards*

30. The Gauthiers' program involves the customers' use of offshore payment cards, which may be either credit or debit cards. The Gauthiers tell customers that these cards enhance a user's privacy and financial flexibility and can be established without any information identifying the participant.

31. The Gauthiers' promotional material states that participants can use the payment cards to access funds held in their offshore trusts, and that the cards are a safe, private way to bring money back to the United States. The payments cards serve as a means for the participants to access the funds that are otherwise sheltered offshore with the use of the defendants' trusts, IBCs or private interest foundations.

32. The effect of defendants' promotion is that their customer lives in the same residence, controls the same assets, and operates the same business activity as he or did before joining the program, but the customer's personal and business funds are nominally funneled through the entities created by the defendants. The customer receives the full benefit of, and has full control over, all his usual assets and business concerns. The only substantive change in the customers' financial position is the illegal benefit of reduced or eliminated reported federal income tax attributable to the fraudulent scheme.

*Freedom & Prosperity Report #5000*

33. A description of the Gauthiers' scheme is set forth in a document entitled

"Freedom & Prosperity Report # 5000" ("the Report"), which the Gauthiers provide to customers and post on the web at www.befreetech.com./images/5000report.pdf. The website lists PIL as the publisher and the Gauthiers as the editors of the Report. The Report professes to "tell you everything you need to know" about:

- How to legally avoid confiscatory taxation
- How to become "international"
- How to use offshore centers
- How to set up and use offshore companies
- How to hide your assets, and protect your privacy
- How to live free from "Big Brother's" meddling
- How to avoid probate, protect your heirs and "disinherit" government
- How to increase profits with tax-free compounding

34. The Report falsely states that by joining the program customers can reduce their taxes and avoid risk, safeguard and judgment-proof assets, and take advantage of all the offshore support services.

35. The Report describes as "old thinking" such statements as:

- Government makes laws and regulations.
- People must obey the laws and regulations.
- Government has the right to tax people.
- People must pay their 'fair share.'

36. Conversely, the Report states, if persons adopt the "new thinking" then

"powerful options become available to you." Examples of "new thinking" are such statements as:

- Tax is theft.
- The notion of paying your 'fair share' is the result of brainwashing.
- People are by nature free and do not need 'permission' (licenses) to operate businesses or practice as professionals.

37. In the Report, the Gauthiers advise customers to prevent tax withholding from their paychecks by not signing W-4 forms (employee withholding allowance certificates).

38. The Report gives specific instructions on how participants can move funds around, domestically and internationally, without leaving a paper trail for creditors or the government to follow.

39. To promote their scheme falsely state to prospective customers that the 16th Amendment was never legally ratified and that the federal income tax is unconstitutional.

40. The Gauthiers also falsely state that the federal income tax is based on contractual obligations involving corporations and the state, and does not apply to individuals.

41. According to his promotional materials, Pierre Gauthier has an MBA degree and is a certified financial planner. He has an extensive business background.

42. Jay Gauthier is touted on the defendants' website, www.pill.net, as a renowned international businessman and an expert in the field of international financial services.

43. The Gauthiers market their abusive tax scheme nationwide on the Internet, including on their website, www.pill.net. In addition to advertising on the web, the

Gauthiers use toll-free telephone numbers to market their schemes.

44. According to their website, the defendants have over 150,000 members in their program in more than 140 countries.

45. The Gauthiers' abusive tax scheme is one of the types identified in the IRS's annual list of the "dirty dozen" tax scams. (*See* http://www.irs.gov/newsroom/article/0,,id=136337,00.html.)

46. The Michigan Attorney General's office has issued an order to PIL, PILL and their officers and affiliates to cease and desist any marketing activities in Michigan related to their products or services.

**Count I**
**Injunction under Code § 7408 for violations of Code § 6700**

47. The United States incorporates by reference the allegations contained in paragraphs 1 through 46.

48. Code § 7408 authorizes this court to enjoin persons who have engaged in conduct subject to penalty under Code § 6700 from engaging in further such conduct or any other conduct subject to penalty under the Code.

49. Code § 6700 imposes a penalty on any person who organizes or sells a plan or arrangement and in so doing makes a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any tax benefit by participating in the plan or arrangement that the person knows or has reason to know is false or fraudulent as to any material matter.

50. Defendants organize and sell tax schemes. In organizing and selling their tax

schemes, defendants make statements regarding the tax benefits associated with participation in the scheme that they know are false or fraudulent as to material matters within the meaning of Code § 6700.

51. Unless enjoined, the defendants are likely to continue to engage in conduct subject to the § 6700 penalty.

**Count II**
**Injunction under Code § 7402**

52. The United States incorporates by reference the allegations contained in paragraphs 1 through 51.

53. Code § 7402 authorizes U.S. District Courts to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws.

54. Defendants, through the actions described above, have engaged in conduct that interferes substantially with the administration and enforcement of the internal revenue laws.

55. Defendants' conduct results in irreparable harm to the United States and the United States has no adequate remedy at law. Defendants' conduct is causing and will continue to cause substantial revenue losses to the United States Treasury, much of which may be unrecoverable.

56. Unless defendants are enjoined, the IRS will have to devote substantial time and resources to identify and locate their customers, and then construct and examine those persons' tax returns and liabilities. The burden of pursuing individual customers may be an insurmountable obstacle, given the IRS's limited resources.

57. If defendants are not enjoined, they likely will continue to engage in conduct that

obstructs and interferes with the enforcement of the internal revenue laws.

**Relief Sought**

WHEREFORE, the United States prays for the following relief:

A. That the Court find that each of the defendants has engaged in conduct subject to penalty under Code § 6700, and that injunctive relief is appropriate under Code § 7408 to prevent the defendants, and any business or entity through which they operate, and anyone acting in concert with them, from engaging in further such conduct;

B. That the Court find that each of the defendants has engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief against the defendants, and any business or entity through which they operate, and anyone acting in concert with them, is appropriate to prevent the recurrence of that conduct pursuant to the Court's powers under Code § 7402(a);

C. That the Court, pursuant to Code §§ 7402 and 7408, enter a permanent injunction prohibiting the defendants, individually and doing business through Prosper International Ltd., Prosper International League Limited, their web site www.pill.net, or any other entity, and their representatives, agents, servants, employees, attorneys, and those persons in active concert or participation with them, including their distributors, from directly or indirectly:

(1) Organizing, promoting, marketing, or selling any tax shelter, plan or arrangement that advises, assists, or encourages customers to attempt to violate the internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities;

(2) Making false statements about the allowability of any deduction or credit, the excludability of any income, or the securing of any tax benefit by reason of participating in such tax shelters, plans or arrangements;

(3) Encouraging, instructing, advising, or assisting others to violate federal tax laws, including to evade the payment of taxes;

(4) Engaging in conduct subject to penalty under Code § 6700, *i.e.*, by making or furnishing, in connection with the organization or sale of an abusive shelter, plan, or arrangement, a statement the defendants know or have reason to know to be false or fraudulent as to any material matter under the federal tax laws;

(5) Engaging in any conduct that interferes with the administration and enforcement of the internal revenue laws; and

(6) Engaging in any conduct subject to penalty under any other section of the Internal Revenue Code.

D. That this Court, pursuant to Code § 7402, enter an injunction requiring defendants to produce to the United States their customer list, including the names, addresses, e-mail addresses, telephone numbers, and social security or tax identification numbers, identifying the persons who have purchased their tax plans, arrangements or programs (purchased directly from them or from their associates, distributors or related entities), and to file with the Court, within 20 days of the date the permanent injunction is entered, a certification under penalty of perjury that they have done so;

E. That this Court, pursuant to Code § 7402, enter an injunction requiring defendants to contact by mail (or by e-mail, if an address is unknown) all individuals and entities that have purchased their tax shelters, plans, arrangements or programs, and inform them of the Court's findings concerning the falsity of the defendants' representations and attach a copy of the permanent injunction, and to file with the Court, within 20 days of the date the permanent injunction is entered, a certification under penalty of perjury that they have done so;

F. That this Court, pursuant to Code § 7402, enter an injunction requiring defendants and their representative, agents, servants, employees, attorneys, and those persons in active concert or participation with them, including their distributors, to remove from their websites, including www.pill.net, all tax scheme promotional materials, false commercial speech, and materials designed to incite others imminently to violate the law (including the tax laws), to display prominently on the first page of those websites a complete copy of the Court's permanent injunction, and to maintain the web sites for one year with a complete copy of the Court's permanent injunction so displayed throughout that time, and to file with the Court, within 20 days of the date the permanent injunction is entered, a certification that thy have done so;

G. That this Court order that the United States is permitted to engage in post-judgment discovery to ensure compliance with the permanent injunction;

H. That this Court retain jurisdiction over this action for purposes of implementing and enforcing the final judgment; and

I. For such other and further relief as this Court may deem proper and just.

Respectfully submitted,

PAUL I. PEREZ
United States Attorney

MARTIN M. SHOEMAKER
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 7238
Washington, D.C. 20044
Telephone: (202) 514-6491
Fax: (202) 514-6770
martin.m.shoemaker@usdoj.gov